David S. Douglas (DD-6250)
GALLET DREYER & BERKEY, LLP
845 Third Avenue, 8th Floor
New York, New York 10022
(212) 935-3131

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GS EQUITIES, LTD. and EROSTRA, LLC,

                              Plaintiffs,

                                                          08 Civ. 01581 (CM)

          -against-

BLAIR RYAN CO., JAY PELSINGER, FRED
PELSINGER and LEONIDES GUADARRAMA,

                              Defendants.
-------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


**GALLET DREYER & BERKEY, LLP**
**845 Third Avenue, 8th Floor**
**New York, New York 10022**
**(212) 935-3131**

**Attorneys for Defendants Blair Ryan Co.,**
**Jay Pelsinger, and Fred Pelsinger**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

Preliminary Statement ........................................................................................... 1

The Complaint's Allegations .................................................................................. 2

ARGUMENT............................................................................................................ 3

POINT I    PLAINTIFFS' CONTRACT CLAIMS CANNOT
           BE SUSTAINED AS A MATTER OF LAW .................................... 4

           A.    This Lawsuit is Barred by GS Equities' Conceded
                 Failure to Adhere to its Contractual Obligation to
                 Give Written Notice and an Opportunity to Cure
                 with Respect to any Claimed Breach.......................................... 5

           B.    Erostra is Not a Party to the Contracts and Therefore
                 Cannot Maintain Breach of Contract Claims under
                 the Contracts .............................................................................. 6

           C.    New York Law Does Not Recognize a Separate
                 Cause of Action for "Breach of the Covenant of
                 Good Faith and Fair Dealing" Under Circumstances
                 Such as Alleged Here.................................................................. 6

POINT II   PLAINTIFFS' FRAUD CLAIM IS NOT VIABLE
           AS A MATTER OF LAW................................................................. 7

           A.    Plaintiffs' Duplicative "Fraud" Claim Cannot
                 Proceed Under Settled Law ........................................................ 8

           B.    Plaintiffs' "Fraud" Claim Fails to Comport
                 with Fed. R. Civ. P. 9(b)............................................................ 9

POINT III  PLAINTIFFS' CONVERSION CLAIM IS NOT
           SUSTAINABLE AS A MATTER OF LAW ................................... 10

POINT IV   PLAINTIFFS' INVOCATION OF THE RICO
           STATUTE IS UTTERLY FRIVOLOUS ........................................ 12

POINT V    JAY AND FRED ARE NOT SUBJECT TO
           PERSONAL JURISDICTION IN NEW YORK.............................. 16

POINT VI    IF THIS CASE IS NOT DISMISSED OUTRIGHT --
AS IT SHOULD BE -- AT A MINIMUM IT SHOULD
BE STAYED PENDING CONTRACTUALLY
MANDATED ARBITRATION ........................................................21

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

Cases

Acito v. IMCERA Group, Inc.,
47 F.3d 47 (2d Cir. 1995) ......................................................................................9

Airlines Reporting Corp. v. Aero Voyagers, Inc.,
721 F. Supp. 579 (S.D.N.Y. 1989) ......................................................................14

Alvord & Swift v. Stewart M. Muller Construction Co., Inc.,
46 N.Y.2d 276, 385 N.E.2d 1238, 413 N.Y.S.2d 309 (1978)...............................6

AMF Inc. v. Brunswick Corp.,
621 F. Supp. 456 (E.D.N.Y. 1985) .....................................................................23

Anderson v. Indiana Black Expo.,
81 F. Supp. 2d 494 (S.D.N.Y. 2000) ..................................................................19

Ari and Co. v. Regent International Corp.,
273 F. Supp. 2d 518 (S.D.N.Y. 2003) ..................................................................7

Astroworks, Inc. v. Astroexhibit, Inc.,
257 F. Supp. 2d 609 (S.D.N.Y. 2003) ..................................................................8

Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez,
171 F.3d 779 (2d Cir. 1999) .........................................................................17, 18

Baran Computer Services, Ltd. v. First Bank of Maury County,
143 A.D.2d 63, 531 N.Y.S.2d 315 (2d Dept. 1988) ...........................................20

Bates Advertising USA, Inc. v. McGregor,
282 F. Supp. 2d 209 (S.D.N.Y. 2003) ..................................................................7

Bell Atlantic Corp. v. Twombly,
__ U.S. __, 127 S. Ct. 1955 (2007).................................................................3, 4

Bensusan Restaurant Corp. v. King,
126 F.3d 25 (2d Cir. 1997) ................................................................................17
Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,
98 F.3d 13 (2d Cir 1996) .................................................................................8, 9

Cal Distributor, Inc. v. Cadbury Schweppes Americas Beverages, Inc.,
2007 WL 54534 (S.D.N.Y. 2007)........................................................................11

Cary Oil Co. v. MG Refining & Marketing, Inc.,
90 F. Supp. 2d 401 (S.D.N.Y. 2000) ................................................................7

CB Richard Ellis, Inc. v. American Environmental Waste Management,
1998 WL 903495 (E.D.N.Y. 1998) .................................................................23

China Trust Bank of New York v. Standard Chartered Bank, PLC,
981 F. Supp. 282 (S.D.N.Y. 1997) .................................................................15

Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.,
70 N.Y.2d 382, 516 N.E.2d 190, N.Y.S.2d 653 (1987)....................................8

CMNY Capital, L.P. v. Perry,
1998 WL 132846 (S.D.N.Y. 1998)................................................................18

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
187 F.3d 229 (2d Cir. 1999) ....................................................................12, 14

Colavito v. New York Organ Donor Network, Inc.,
8 N.Y.2d 43, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006)..................................11

Collins & Aikman Products Co. v. Building Systems, Inc.,
58 F.3d 16 (2d Cir. 1995) ...............................................................................24

CPR (USA) Inc. v. Spray,
187 F.3d 245 (2d Cir. 1999) .....................................................................23, 24

D.R.S. Trading Co. v. Fisher,
2002 WL 1482764 (S.D.N.Y. 2002)...........................................................14, 15

De Falco v. Bernas,
244 F.3d 286 (2d Cir.), cert. denied, 534 U.S. 891 (2001)...............................14

Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213, 105 S. Ct. 1238 (1985)..............................................................24

Di Siena v. Di Siena,
266 A.D.2d 673, 698 N.Y.S.2d 93 (3d Dept. 1999) .........................................11

Diaz v. NBC Universal, Inc.,
536 F. Supp. 2d 337 (S.D.N.Y. 2007) ..........................................................3, 4

DiVittorio v. Equidyne Extractive Industries, Inc.,
822 F.2d 1242 (2d Cir. 1987) ......................................................................9-10

DynCorp v. GTE Corp.,
215 F. Supp. 2d 308 (S.D.N.Y. 2002) ...............................................................8

Faherty v. Fender,
572 F. Supp. 142 (S.D.N.Y. 1983) ..................................................................19

Fiedler v. First City National Bank of Houston,
807 F.2d 315 (2d Cir. 1986) ....................................................................16, 18

Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.,
865 F.2d 513 (2d Cir. 1989) .............................................................................5

First Capital Asset Management, Inc. v. Brickellbush, Inc.,
218 F. Supp. 2d 369 (S.D.N.Y. 2002) .............................................................17

First National Bank and Trust Co. v. Wilson,
171 A.D.2d 616, 567 N.Y.S.2d 468 (1st Dept. 1991) .......................................19

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994), cert. denied, 513 U.S. 1079 (1995).........................4

GICC Capital Corp. v. Technology Finance Group, Inc.,
67 F.3d 463 (2d Cir. 1995), cert denied, 518 U.S. 1017 (1996).........................15

Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C.,
288 F. Supp. 2d 473 (S.D.N.Y. 2003) .............................................................11

H.J. Inc. v. Northwestern Bell Telephone Co.,
492 U.S. 229, 109 S. Ct. 2893 (1989).........................................................13, 14

Hanson v. Denckla,
357 U.S. 235, 78 S. Ct. 1228 (1958)................................................................18

Harris v. Provident Life & Accident Insurance Co.,
310 F.3d 73 (2d Cir. 2002) ..............................................................................7

Huang v. Sentinel Governmental Securities,
657 F. Supp. 485 (S.D.N.Y. 1987) ..................................................................19

I.T.R.I. Masonry Corp. v. State of New York,
21 A.D.3d 990, 801 N.Y.S.2d 396 (2nd Dept. 2005) ..........................................6

Kahn Lucas Lancaster, Inc. v. Lark International Ltd.,
956 F. Supp. 1131 (S.D.N.Y. 1997) ................................................................21

Levy v. Southbrook International Investments Ltd.,
263 F.3d 10 (2d Cir. 2001), cert. denied, 535 U.S. 1054 (2002)........................................3

M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.,
247 A.D.2d 515, 669 N.Y.S.2d 318 (2d Dept. 1998) ........................................................6

McKee Elec. Co. v. Rauland-Borg. Corp.,
20 N.Y.2d 377, 229 N.E.2d 604, 283 N.Y.S.2d 24 (1967)....................................18, 19, 21

Medical Inc. v. Angicor Ltd.,
677 F. Supp. 1000 (D. Minn. 1988).................................................................................13

Metropolitan Transportation Authority v. Triumph Advertising, Inc.,
116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dept. 1986) ....................................................8-9

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir. 1993) ...........................................................................................9

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
460 U.S. 1, 102 S. Ct. 927 (1983)...............................................................................23, 24

Odyessey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
85 F. Supp. 2d 282 (S.D.N.Y. 2000), affirmed, 2 Fed. Appx. 109 (2d Cir. 2001)............10

Ouaknine v. MacFarlane,
897 F.2d 75 (2d Cir. 1990) ..............................................................................................9

Photo Promotions Associates v. Household International, Inc.,
584 F. Supp. 1238 (S.D.N.Y. 1984) ................................................................................18

Point Productions A.G. v. Sony Music Entertainment, Inc.,
2000 WL 1006236 (S.D.N.Y. 2000)..................................................................................5

Presidential Realty Corp. v. Michael Square West, Ltd.,
44 N.Y.2d 672, 376 N.E.2d 198, 405 N.Y.S.2d 37 (1978).................................................19

Price v. Gast,
2000 WL 369381 (S.D.N.Y. 2000).................................................................................15

PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,
138 F.3d 65 (2d Cir. 1998) ........................................................................................ 20-21

Rothman v. Gregor,
220 F.3d 81 (2d Cir. 2000) ..............................................................................................4

Shams v. Fisher,
107 F. Supp. 2d 266 (S.D.N.Y. 2000) ........................................................... 11, 12

SNS Bank, N.V. v. Citibank, N.A.,
7 A.D.3d 352, 777 N.Y.S.2d 62 (1st Dept. 2004) ...................................... 19-20

Spool v. World Child International Adoption Agency,
520 F.3d 178 (2d Cir. 2008) ........................................................................... 14

Stein v. Annenberg Research Institute,
1991 WL 143400, at *3 (S.D.N.Y. 1991) ....................................................... 19

Walden Terrace, Inc. v. Broadwall Management Corp.,
213 A.D.2d 630, 624 N.Y.S.2d 217 (2d Dept. 1995) ...................................... 11

Widett v. U.S. Fidelity and Guar. Co.,
815 F.2d 885 (2d Cir. 1987) ............................................................................. 6

Statutes and Rules

9 U.S.C. 1 et seq. ..................................................................................... 22-24

18 U.S.C. § 1961 et seq. ............................................................. 12-15, 20-21

CPLR § 302 ............................................................................................ 17-20

Fed. R. Civ. P. 4(e) ....................................................................................... 16

Fed. R. Civ. P. 9(b) ...................................................................................... 8, 9

Fed. R. Civ. P. 12 (b)(2) .......................................................................... 16-17

Fed. R. Civ. P. 12 (b)(6) ................................................................................. 3

David S. Douglas (DD-6250)
GALLET DREYER & BERKEY, LLP
845 Third Avenue, 8th Floor
New York, New York 10022
(212) 935-3131

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GS EQUITIES, LTD. and EROSTRA, LLC,

                              Plaintiffs,

                                                    08 Civ. 01581 (CM)

        -against-

BLAIR RYAN CO., JAY PELSINGER, FRED
PELSINGER and LEONIDES GUADARRAMA,

                              Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

### Preliminary Statement

        This case is a straightforward contract dispute that has no business being before

this Court. The individual defendants are not parties to the contracts at issue and have no

connection whatsoever to New York. One of the plaintiffs is likewise not even a party to

either of the contracts. Plaintiffs' ham-handed invocation of the RICO statute is so

baseless and misguided as a matter of law as to be utterly frivolous, as are plaintiffs'

equally legally unsustainable tort claims. Moreover, the contracts themselves are

governed by arbitration clauses. For each of these reasons, plaintiffs' case should be

dismissed in its entirety or, at a minimum, stayed pending the conclusion of any

arbitration proceedings initiated under the contracts at issue.

The Complaint's Allegations

According to the complaint, plaintiffs GS Equities, Ltd. ("GS Equities") and Erostra, LLC ("Erostra") are in the business of marketing and distributing, among other things, herbal supplements. In or about July 2005 and November 2006, GS Equities entered into two separate Distribution Contracts with defendant Blair Ryan Co. ("Blair Ryan") (respectively, the "2005 Contract" and the "2006 Contract" and collectively, the "Contracts"), copies of which plaintiffs annexed as an exhibit to their complaint. None of the individual defendants is a party to the Contracts (Jay Pelsinger Aff't, Exhibit 1, ¶¶ 8-9 and Exhibit A).

Under the Contracts, Blair Ryan provided GS Equities with distribution rights to certain products. The Contracts both contain a representation by Blair Ryan that the covered products "contain all natural ingredients" and comply with all federal Food and Drug Agency regulations, a representation upon which GS Equities states that it relied in entering into the Contracts. (Id. ¶¶ 10-14).

Plaintiffs claim that laboratory tests revealed that the products were not in fact "all natural." Plaintiffs further claim that Blair Ryan did not obtain supposedly required FDA approvals for the products. (Id. ¶¶ 15-17). According to plaintiffs, this constituted a "breech" of the Contracts. Also, according to plaintiffs, Blair Ryan, Jay Pelsinger ("Jay"), and Fred Pelsinger ("Fred"), together with the remaining defendant, Leonides Guadarrama, "conspired" to import products into the United States for later distribution by Mr. Guadarrama into Mexico. (Mr. Guadarrama has not been served.) (Id. ¶¶ 18-19).

The complaint contains five claims. Count I is a breach of contract claim that both plaintiffs bring against Blair Ryan. Count II, entitled "Breach of Covenant of Good

Faith and Fair Dealing", likewise asserts, again on behalf of both plaintiffs, that Blair Ryan breached the Contracts. Count III seeks damages not only from Blair Ryan but Jay and Fred as well, for supposed "fraud and fraud in the inducement." Count IV is a "conversion" claim directed against Blair Ryan, Jay, and Fred. Count V asserts that each of the four defendants knowingly violated unspecified FDA regulations, and thus somehow is liable under the federal RICO statute.

None of these claims is sustainable as a matter of law, and this groundless action therefore cannot go forward.

ARGUMENT

As this Court well knows, Fed. R. Civ. P. 12(b)(6) provides an avenue for defendants to move for dismissal of a legally baseless complaint where the complaint "fail[s]. . . to state a claim upon which relief can be granted." See e.g., Levy v. Southbrook International Investments Ltd., 263 F.3d 10, 14 (2d Cir. 2001), cert. denied, 535 U.S. 1054 (2002). The United States Supreme Court has recently emphasized that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); Diaz v. NBC Universal, Inc., 536 F. Supp. 2d 337, 342-43 (S.D.N.Y. 2007) (quoting Bell Atlantic Corp.).

In considering such a motion, the Court as a general matter must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. The Court, however, is not required to accept as true

"conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994), cert. denied, 513 U.S. 1079 (1995). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 127 S. Ct. at 1965.

Furthermore, in deciding a motion to dismiss, the Court may take into account documents that are annexed to or otherwise incorporated into the complaint or that the plaintiff either possessed or knew about and relied upon in bringing the suit. See, e.g., Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000); Diaz, 536 F. Supp. 2d at 343.

Application of these standards to this case mandates that the complaint be dismissed in its entirety, as each of the claims fails as a matter of law. In the alternative, and at a minimum, this litigation must be stayed so that, if GS Equities truly wishes to pursue its (baseless) claims, it do so in the Delaware arbitration forum that the Contracts require.

POINT I

PLAINTIFFS' CONTRACT CLAIMS CANNOT<br>BE SUSTAINED AS A MATTER OF LAW

Neither of plaintiffs' contractual claims -- Count I, for supposed breach of contract, and Count II, for alleged breach of the covenant of good faith and fair dealing that adheres to all contracts -- is legally viable, for several reasons. First, plaintiffs' own complaint makes clear that GS Equities failed to adhere to the contractual requirement that it give Blair Ryan written notice of any claimed breach and an opportunity to cure. Second, plaintiff Erostra is not even a party to either of the Contracts. Third, New York law does not recognize a separate claim for purported breach of the covenant of good faith and fair dealing under circumstances such as plaintiffs allege here.

4

A.     This Lawsuit is Barred by GS Equities' Conceded Failure to
       Adhere to its Contractual Obligation to Give Written Notice
       and an Opportunity to Cure with Respect to any Claimed Breach

This lawsuit, and plaintiffs' contractual claims in particular, are barred by GS Equities' conceded failure to adhere to a fundamental contractual prerequisite to the commencement of any legal proceedings. Specifically, both the 2005 Contract and the 2006 Contract explicitly state, in sections titled "Term of Contract", that GS Equities is required to provide Blair Ryan with written notice of any claimed breach of Blair Ryan's contractual obligations and a thirty-day window of opportunity to cure any such breach:

> This Agreement may be terminated by either party upon the material default of the other party unless such default is cured within thirty days after written notice thereof is received by such defaulting party.

(Complaint, Exhibit A, 2005 Contract at 4; 2006 Contract at 4 of 11).

The complaint's silence on this point is deafening. Nowhere in the complaint is there any allegation whatsoever that GS Equities ever provided Blair Ryan any notice of any claimed breach of any of Blair Ryan's obligations under either of the Contracts, no less the written notice and thirty-day opportunity to cure that both the Contracts require. Plaintiffs' claims under the Contracts must therefore be dismissed. See, e.g., Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513 (2d Cir. 1989) (failure to give contractually-secured opportunity to cure constituted fatal defect); Point Productions A.G. v. Sony Music Entertainment, Inc., 2000 WL 1006236 (S.D.N.Y. 2000) (party asserting non-performance must afford allegedly defaulting party contractually-secured opportunity to cure).

B.    Erostra is Not a Party to the Contracts and Therefore Cannot
      Maintain Breach of Contract Claims under the Contracts

The sole parties to the sued-upon Contracts are GS Equities and Blair Ryan. Needless to say, the only proper parties to claims alleging breach of contractually-derived obligations are the parties to that contract. There is no allegation that even hints that Erostra is conceivably somehow in privity with Blair Ryan or an assignee or third-party beneficiary of either the 2005 Contract or the 2006 Contract.

It is hornbook law that a plaintiff cannot maintain an action for breach of contract, and therefore dismissal of its claims is warranted, where that plaintiff has no contractual relationship with the defendant, and was never in privity with the defendant. See, e.g., Widett v. U.S. Fidelity and Guar. Co., 815 F.2d 885 (2d Cir. 1987); Alvord & Swift v. Stewart M. Muller Construction Co., Inc., 46 N.Y.2d 276, 282, 385 N.E.2d 1238, 413 N.Y.S.2d 309 (1978); I.T.R.I. Masonry Corp. v. State of New York, 21 A.D.3d 990, 991, 801 N.Y.S.2d 396, 397 (2nd Dept. 2005); M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp., 247 A.D.2d 515, 669 N.Y.S.2d 318 (2d Dept. 1998).

Accordingly, to the extent that the Count I and Count II each purport to be brought against Blair Ryan on behalf of not only GS Equities but Erostra as well, they must be dismissed for this reason as well.

C.    New York Law Does Not Recognize a Separate Cause of
      Action for "Breach of the Covenant of Good Faith and
      Fair Dealing" Under Circumstances Such as Alleged Here

Plaintiffs' Second Count, which seeks to state a claim against Blair Ryan for purported breach of the "covenant of good faith and fair dealing", does not set forth a viable cause of action. The supposed breach of such duty was that Blair Ryan was

"unable to produce product in accordance with the Contracts." (Complaint ¶ 25). In other words, the "breach" was merely an inability to perform under the terms of the Contract.

Under New York law, there is no separate cause of action for breach of an implied covenant of good faith or fair dealing where such claim rests on an alleged inability to perform under the specific terms of the contract at issue. E.g., Harris v. Provident Life & Accident Insurance Co., 310 F.3d 73, 81 (2d Cir. 2002) (no separate cause of action for breach of implied covenant of good faith and fair dealing when breach of contract claim based on same facts is also pled); Bates Advertising USA, Inc. v. McGregor, 282 F. Supp. 2d 209, 219 (S.D.N.Y. 2003) (claims asserting breach of covenant of good faith and fair dealing dismissed where allegations mirrored breach of contract claim); Ari and Co. v. Regent International Corp., 273 F. Supp. 2d 518, 522-23 (S.D.N.Y. 2003) (breach of covenant of good faith and fair dealing claim should be dismissed where damages sought are tied to damages allegedly resulting from breach of contract); Cary Oil Co. v. MG Refining & Marketing, Inc., 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000) (claim of breach of implied covenant of good faith and fair dealing should be dismissed as duplicative where conduct underlying claim is also predicate for breach of contract claim).

For this reason too plaintiffs' Count II should be dismissed in its entirety.

## POINT II

### PLAINTIFFS' FRAUD CLAIM IS NOT VIABLE AS A MATTER OF LAW

Plaintiffs' "fraud" claim, Count III, is likewise unsustainable as a matter of law for multiple reasons. First, this claim, which merely parrots the breach of contract claims

in the guise of a different legal theory, is not maintainable under settled law. Second, even if it were, the claim falls woefully short of the particularity that Fed. R. Civ. P. 9(b) requires of all claims cloaked in the rubric of supposed "fraud."

A.    Plaintiffs' Duplicative "Fraud" Claim
      Cannot Proceed Under Settled Law

Plaintiffs' "fraud" claim is no more than a rehash of their breach of contract claim, merely dressed up in the garb of another legal doctrine. The "fraud", according to plaintiffs, boils down to nothing more than that defendants allegedly did not adhere to their contractual representation that Blair Ryan "could and would produce products in conformity with the Contracts" and supposedly did not intend to do so, and that if GS Equities had known that Blair Ryan would not perform under the Contracts in the manner envisioned by GS Equities, GS Equities would not have entered into the Contracts.

Plaintiffs' claimed damages, moreover, are identical those sought in their contract claims.

Such allegations cannot legitimately allow plaintiffs to tack on a fraud claim to this breach of contract action. It has long been established that breaching a contract does not constitute fraud unless a legal duty, independent of the contract itself, has also been violated. Moreover, any such independent legal duty must spring from circumstances extraneous to, and not constituting, elements of the contract itself. See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13 (2d Cir 1996); DynCorp v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002); Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609 (S.D.N.Y. 2003); Clark-Fitzpatrick, Inc. v. Long Island Railroad Co., 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987); Metropolitan Transportation Authority v. Triumph Advertising Productions, Inc., 116

A.D.2d 526, 497 N.Y.S.2d 673 (1st Dept. 1986).  As the Second Circuit held in Bridgestone/Firestone, even an allegation of an intentionally false statement that meets all the elements of a proper fraud claim cannot support a cause of action:

> where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement."

98 F.3d at 20 (quoting Metropolitan Transportation Authority, 116 A.D.2d 526, 497 N.Y.S.2d 673).

B.    Plaintiffs' "Fraud" Claim Fails to Comport with Fed. R. Civ. P. 9(b)

Even if plaintiffs could pursue their wholly duplicative fraud claim -- which, as shown above, they cannot -- it would still run afoul of Fed. R. Civ. P. 9(b).  Rule 9(b) provides, in pertinent part, that, "in all averments of fraud. . .  the circumstances constituting the fraud. . . shall be stated with particularity."  Under Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993).  A complaint, furthermore, must plead "facts that give rise to a strong inference of fraudulent intent."  Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995); see also, Mills, 12 F.3d at 1176; Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 1990).

Furthermore, where, as here, multiple defendants have been sued, plaintiffs are required to detail how each defendant entity or person was involved in each event.  As the Second Circuit has held, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"  Mills, 12 F.3d at 1175.  See also, e.g., DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d

Cir. 1987) ("where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud"); Odyessey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) ("when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant" (quoting Ellison v. American Image Motor Co., 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1989)), affirmed, 2 Fed. Appx. 109 (2d Cir. 2001).

Plaintiffs' complaint falls woefully short of these requirements. The complaint fails to identify a single specific statement that plaintiffs contend was fraudulent, no less which of the various named defendants supposedly made such statement, where or when that specific statement was made, or the manner in which each such specific statement was supposedly fraudulent. Rather, all the complaint does is precisely what the Second Circuit has proscribed, vaguely attributing never-specified statements to defendants as a whole in as cursory a manner as one could conceive.

Count III should therefore be dismissed in its entirety.

POINT III

PLAINTIFFS' CONVERSION CLAIM IS NOT<br>SUSTAINABLE AS A MATTER OF LAW

Plaintiffs' "conversion" claim is likewise fatally flawed as a matter of law. All that plaintiffs allege as the purported foundation for this claim is that plaintiffs purportedly advanced monies to defendants in connection with laboratory testing of the products that are the subject of the Contracts, and that defendants supposed did not repay that sum.

10

However:

> To withstand a motion to dismiss, a claim for conversion of funds must allege: (1) an injury caused by an actionable wrong other than a breach of contract; (2) that the plaintiff owned the funds at the time they were converted; (3) the defendant exercised unauthorized dominion over the funds; (4) that the funds were specific and identifiable: and (5) that the defendants was required to treat the funds in a particular manner, but failed to do so. W.B. David & Co. v. DWA Communications, Inc., No. 02 Civ. 8479, 2004 WL 369147, at *5 (S.D.N.Y. Feb. 26, 2004).

Cal Distributor, Inc. v. Cadbury Schweppes Americas Beverages, Inc., 2007 WL 54534, at *11 (S.D.N.Y. 2007).  Furthermore:

> To make out a claim for conversion under New York law, a plaintiff must establish "legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights." Di Siena v. Di Siena, 266 A.D.2d 673, 698 N.Y.S.2d 93, 95 (3d Dept. 1999).

Shams v. Fisher, 107 F. Supp. 2d 266, 282 (S.D.N.Y. 2000).

Moreover, "to state a cause of action for conversion of money, the money must be 'described or identified in the same manner as a specific chattel.'"  Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C., 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003) (quoting 9310 Third Ave. Associates, Inc. v. Schaffer Food Service Co., 210 A.D.2d 207, 620 N.Y.S.2d 255, 256 (2d Dept. 1994); see also, e.g., Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 50, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96, 100 (2006); Walden Terrace, Inc. v. Broadwall Management Corp., 213 A.D.2d 630, 624 N.Y.S.2d 217 (2d Dept. 1995).

Plaintiffs' claim here fails this standard on nearly every score.  The alleged injury is nothing other than another claim breach of the Contracts.  There is no claim that defendants exercised "unauthorized dominion" over any specific property owned by

11

plaintiffs; to the contrary, plaintiffs themselves state that plaintiffs purportedly voluntarily advanced funds to defendants. There is likewise no specific or identifiable "fund" involved, but rather just a payment made in connection with the Contracts. Nor is there any contention that defendants used the money for anything other than that for which it was allegedly intended, namely, laboratory testing of the products covered by the Contracts.

Accordingly, Count IV likewise should be dismissed.

POINT IV

PLAINTIFFS' INVOCATION OF THE RICO STATUTE IS UTTERLY FRIVOLOUS

Plaintiff's RICO claim is utterly frivolous and betrays a complete failure to comprehend the requirements of that statute. As the Court is well aware, 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his person or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court. . . ." Section 1962(c), in turn, provides for liability under RICO only where a defendant has "conduct[ed] or participate[d], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." "To establish a claim for a civil violation of § 1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994); Shams v. Fisher, 107 F. Supp. 2d 266, 274 (S.D.N.Y. 2000). Plaintiffs here fail to satisfy these requisite elements of a § 1962(c) claim.

First, plaintiffs have failed to allege a predicate act of "racketeering activity." The complaint is entirely devoid, for instance, of any allegations whatsoever of any "mail fraud" or "wire fraud" (those being commonly employed predicate acts in attempted RICO claims in the commercial context).    Rather, the sole foundation for plaintiffs' attempted RICO claim is that defendants supposedly violated FDA regulations. Violation of FDA regulations, however, does not constitute "racketeering activity" under RICO. See 18 U.S.C. § 1961(1) (defining predicate acts that constitute "racketeering activity"); cf. Medical Inc. v. Angicor Ltd., 677 F. Supp. 1000 (D. Minn. 1988) (submission of data to FDA to obtain right to export company's product did not constitute "racketeering" under RICO).

Second, there is no "pattern" involved.  Indeed, plaintiffs in their RICO count do not even allege that there was any "pattern" of "racketeering activity."  Moreover, in order to constitute a "pattern of racketeering activity", there must be multiple predicate acts that amounted to or posed the threat of continuing criminal activity.  The only "multiple" act alleged is that GS Equities and Blair Ryan entered into two Contracts.  The routine act of entering into a business contract hardly constitutes the "threat of continued criminal activity" that the United States Supreme Court has declared is necessary for a finding of the existence of a "pattern of racketeering activity" under RICO.  As the Supreme Court stated in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S. Ct. 2893, 2900 (1989) (emphasis added):

> A pattern is not formed by "sporadic activity," S. Rep. No. 91-617, p. 158 (1969). . . . RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."

13

Furthermore, the requisite "continuity" must be shown by demonstrating either a "closed period of repeated conduct" or an "open ended concept." Id., 109 S. Ct. at 2902. Plaintiffs satisfy neither prong here. With respect to a "closed period", the plaintiff must prove "a series of related predicates extending over a substantial period of time." Id. Here, all plaintiffs have even alleged are the existence of two innocuous Contracts entered into only sixteen months apart. The Second Circuit has "never held a period of time of less than two years to constitute a "substantial period of time" sufficient to satisfy RICO. Spool v. World Child International Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008) (quoting Cofacredit, 187 F.3d at 242) (emphasis added); see also, e.g., De Falco v. Bernas, 244 F.3d 286, 321 (2d Cir.), cert. denied, 534 U.S. 891 (2001). Thus, in Spool, the Second Circuit rejected as insufficient under RICO precisely the sixteen-month period involved here. 520 F.3d at 184l; see also, e.g., Airlines Reporting Corp. v. Aero Voyagers, Inc., 721 F. Supp. 579, 583 (S.D.N.Y. 1989) (complaint alleging "close-ended, single scheme involving three perpetrators (a company and two of its directors), one victim, and an uncomplicated transaction (essentially relating to a simple breach of contract)" over thirteen-month period failed to satisfy RICO pattern requirement).

As for the "open ended concept", plaintiffs must prove that:

> the predicates are a regular way of conducting defendant's ongoing legitimate business. . . or of conducting or participating in an ongoing and legitimate RICO "enterprise."

H.J. Inc., 109 S. Ct. at 2902. Here, plaintiffs have not even alleged any such thing. Furthermore, as the court stated in D.R.S. Trading Co. v. Fisher, 2002 WL 1482764, at *4 (S.D.N.Y. 2002), in words that apply directly and with equal force to the situation here:

> When the fraudulent conduct alleged involves such a limited number of perpetrators, small number of victims, and limited goal, it cannot support a claim of open-ended or closed-ended continuity.

See also, e.g., GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463 (2d Cir. 1995) (single victim acts by handful of participants not sufficient to meet continuity requirement), cert. denied, 518 U.S. 1017 (1996); Price v. Gast, 2000 WL 369381, at *9 (S.D.N.Y. 2000) (courts have repeatedly found that "short-lived", inherently terminable schemes with a few criminal acts and few victims do not show a threat of continuity sufficient to plead a RICO "pattern"); China Trust Bank of New York v. Standard Chartered Bank, PLC, 981 F. Supp. 282, 287-88 (S.D.N.Y. 1997) (acts carried out against single victim, pursuant to single scheme, fails both open- and closed-ended continuity requirements).

Moreover, plaintiffs' complaint essentially boils down to a gripe that GS Equities supplied goods that did not conform to the requirements of the Contracts. Such a claim does not a RICO suit make. As the D.R.S. Trading court observed:

> [Plaintiff's] amended complaint makes no allegations of predicate racketeering acts concerning Buggy Whip, but alleges only that it received non-conforming goods. Such activity will not support a RICO claim. See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd., 154 F. Supp. 2d 682, 694 (S.D.N.Y. 2001) (that complainant has not recovered a contractual loss is insufficient to prove threat of criminal acts) (citing Perlman v. Zell, 185 F.3d 850, 853 (7th Cir. 1999) ("breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud").

2002 WL 1482764, at *4 (emphasis added).

Accordingly, Count IV must be dismissed as well.

POINT V

## JAY AND FRED ARE NOT SUBJECT TO
## PERSONAL JURISDICTION IN NEW YORK

This case must be dismissed as to Jay and Fred in any event for lack of personal jurisdiction over them in New York. The sole link between this case and the State of New York is that plaintiffs are New York corporations and one of those plaintiffs, GS Equities, is a party to the Contracts. Jay and Fred, however, are not parties to either of the Contracts, and have no connection whatsoever to New York. Jay is a citizen and resident of the State of Florida. Fred is a citizen and resident of the State of Texas. Fred has no legal connection with Blair Ryan, or either of the plaintiffs, whatsoever; never even saw either of the Contracts until recently; is only mentioned in the Contracts as a contact person in the event of Jay's death or disability; and has had not other business dealings with the plaintiffs at all. Likewise, neither Jay nor Fred owns or operates any businesses located in New York, owns, uses, or leases any property in New York, maintains a bank account, mail drop, or phone number in New York, or files tax returns in New York. Furthermore, while Jay is the person who physically signed the Contracts, he did so solely in his capacity as an officer of Blair Ryan, while in Florida, where Blair Ryan's only office is located. (Jay Pelsinger Aff't ¶¶ 6-9: Fred Pelsinger Aff't ¶¶ 2-6).

Given the absence of contacts between Jay and Fred and New York, plaintiffs' attempt to haul them into court in New York should be dismissed pursuant to Fed. R. Civ. P. 12 (b)(2). This Court can assert jurisdiction over Jay and Fred in this action only if such assertion comports with the laws of New York, the state in which this Court is located. Fed. R. Civ. P. 4(e);  see, e.g., Fiedler v. First City National Bank of Houston, 807 F.2d 315, 316 (2d Cir. 1986). New York law does not permit the exercise of such

jurisdiction. Furthermore, even if the exercise of such jurisdiction were appropriate under New York law -- which it is not -- the Court would then additionally need to determine whether such exercise comports with the requisites of due process. <u>E.g.</u>, <u>Bensusan Restaurant Corp. v. King</u>, 126 F.3d 25, 27 (2d Cir. 1997).

Moreover, on a motion under Rule 12(b)(2), it is the <u>plaintiff</u> that bears the burden of demonstrating that this Court has jurisdiction over the defendant. <u>Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999). The plaintiff, furthermore, must demonstrate personal jurisdiction with respect to each specific claim the plaintiff asserts. <u>First Capital Asset Management, Inc. v. Brickellbush, Inc.</u>, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002).

The only conceivable basis under New York state law for personal jurisdiction over Jay and Fred in this action is New York's long-arm statute, CPLR § 302, which provides:

<blockquote>

(a)     Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1.     transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.     commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.     commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i)     regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

</blockquote>

(ii)    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.    owns, uses or possesses any real property situated within the state.

With respect to subsection (a)(1), a plaintiff must demonstrate not only that the defendant transacted business within New York or agreed to supply goods or services in the state, but that the claim arose out of that activity. Bank Brussels, 171 F.3d at 786. To "transact business", there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958). To determine whether a party has "transacted business" within the meaning of CPLR § 302(a)(1), courts focus on the "totality of the circumstances", i.e., the totality of the defendant's activities within the forum. Fiedler, 807 F.2d at 316.

Plaintiffs cannot possibly meet their burden of satisfying these requisites of long-arm jurisdiction. Neither Jay nor Fred transacted business with New York, nor agreed to supply goods or services in the state. (Jay Pelsinger Aff't ¶¶ 6-9; Fred Pelsinger Aff't ¶¶ 4-6). Moreover, plaintiffs' claims arise out of the Contracts, to which neither Jay nor Fred is even a party. See, e.g., CMNY Capital, L.P. v. Perry, 1998 WL 132846 (S.D.N.Y. 1998), citing McKee Elec. Co. v. Rauland-Borg. Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 283 N.Y.S.2d 24, 38 (1967) (dismissing case, including both contract and fraud claims, for lack of personal jurisdiction; that there had been meeting in New York in prior years on unrelated matters held irrelevant); Photo Promotions Associates v. Household International, Inc., 584 F. Supp. 1238 (S.D.N.Y. 1984) (no jurisdiction over individual who had visited New York in connection with transactions in corporate

capacity, not personal capacity); First National Bank and Trust Co. v. Wilson, 171 A.D.2d 616, 567 N.Y.S.2d 468 (1st Dept. 1991) (dismissal for lack of personal jurisdiction required in suit against non-domiciliary defendant never physically present in state; defendant's visit to New York on unrelated business insufficient basis for personal jurisdiction); Huang v. Sentinel Governmental Securities, 657 F. Supp. 485 (S.D.N.Y. 1987) (dismissing fraud claims for lack of personal jurisdiction); Faherty v. Fender, 572 F. Supp. 142 (S.D.N.Y. 1983) (jurisdiction in New York held lacking where causes of action arise out of conduct in Texas).

Furthermore, that GS Equities may have executed the Contracts in New York is immaterial. Again, it cannot be stressed too strongly that Jay and Fred are not parties to the Contracts. In any event, execution of a contract in New York is insufficient to confer jurisdiction over a non-domiciliary defendant. E.g., Anderson v. Indiana Black Expo., 81 F. Supp. 2d 494, 501-02 (S.D.N.Y. 2000); Presidential Realty Corp. v. Michael Square West, Ltd., 44 N.Y.2d 672, 376 N.E.2d 198, 405 N.Y.S.2d 37, 38 (1978).

As for subsection (a)(2), there is not even any allegation in the complaint whatsoever that Jay or Fred "committed a tortious act within the state." Furthermore, as shown above, they did not engage in any acts in New York, no less any "tortious" ones, concerning plaintiffs. See, e.g., McKee Elec. Co., 20 N.Y.2d at 382, 283 N.Y.S.2d at 38; Stein v. Annenberg Research Institute, 1991 WL 143400, at *3 (S.D.N.Y. 1991) ("the federal cases construing § 302(a)(2), including a 1986 decision by the Second Circuit, have uniformly held that jurisdiction under the section cannot be predicated on telephone calls made or letters made into this State. See Fox v. Boucher, 794 F.2d 34 (2d Cir. 1986);" Huang, 657 F. Supp. 485; SNS Bank, N.V. v. Citibank, N.A., 7 A.D.3d 352, 777

N.Y.S.2d 62 (1st Dept. 2004) (fact that foreign corporation submitted to jurisdiction does not mean that its directors are subject to jurisdiction); Baran Computer Services, Ltd. v. First Bank of Maury County, 143 A.D.2d 63, 531 N.Y.S.2d 315 (2d Dept. 1988) (non-domiciliary's status as officer of corporation does not render him personally subject to jurisdiction under subsection (a)(2).

Plaintiffs fare no better under subsection (a)(3). Once again, neither Jay nor Fred -- as opposed to Blair Ryan -- regularly does or solicits business, engages in any significant course of conduct, or personally derives substantial revenue either from goods or services used, consumed, or rendered in New York or interstate or international commerce. (Jay Pelsinger Aff't ¶¶ 8-9; Fred Pelsinger Aff't ¶¶ 5-6).

Finally, there is no issue concerning real property in this case, so subsection (a)(4) is not pertinent. In any event, neither Jay nor Fred owns, uses, or possesses any real property in New York. (Jay Pelsinger Aff't ¶ 9; Fred Pelsinger Aff't ¶ 6).

That leaves only plaintiffs' federal RICO claim. As shown above, that claim is wholly frivolous and cannot stand as a matter of substantive RICO law. It is jurisdictionally defective as to Jay and Fred as well. In PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65 (2d Cir. 1998), the Second Circuit explicitly rejected the notion that RICO provides "for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." Rather, an initial defendant must reside, have an agent, or transact his or her affairs in the District. Id. at 71. Jay and Fred do not meet that standard (though Blair Ryan arguably might, at least insofar as it entered into the Contracts with GS Equities). As to RICO defendants not found in the District (such as Jay and Fred), jurisdiction may only be asserted over them

upon "a showing that the 'ends of justice' so require."  Such jurisdiction is far from

"automatic."  To the contrary:

> [The first preference. . . is to bring the action where suits are
> normally expected to be brought.  Congress has expressed a
> preference in § 1965 to avoid, where possible, haling defendants
> into far flung flora.

Id. at 71-72.  Here, the "ends of justice" would not remotely be served by forcing Jay and

Fred to be hauled into court in a jurisdiction where they are not in fact located, in which

there is not otherwise any ground for the exercise over them.

In sum, as the court stated in Kahn Lucas Lancaster, Inc. v. Lark International

Ltd., 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997), in dismissing both contract and tort

claims as jurisdictionally defective:

> In judging whether there are sufficient contacts, the New York
> Court of Appeals has cautioned that "we should not forget that
> defendants, as a rule, should be subject to suit where they are
> normally found, that is, at their pre-eminent headquarters or where
> they conduct general business activities."  McKee Elec. Co. v.
> Rauland Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 38, 229
> N.E.2d 604 (N.Y. 1967).

Here, those locations are unquestionably Florida and Texas, and any claim that plaintiffs

may conceivably have against Jay and Fred must proceed there, not in New York, where

personal jurisdiction over Jay and Fred is lacking.

POINT VI

IF THIS CASE IS NOT DISMISSED OUTRIGHT -- AS IT SHOULD
BE -- AT A MINIMUM IT SHOULD BE STAYED PENDING
CONTRACTUALLY MANDATED ARBITRATION

The entirety of this case should be dismissed, for the variety of reasons

demonstrated above.  Even absent complete dismissal, however, at a minimum this suit

must be stayed so that, if GS Equities truly wishes to pursue its baseless claims, it do so

in the Delaware arbitration forum that the Contracts require.

Each of the Contracts contains a broad, largely identical arbitration clause. The

2005 Contract states (2005 Contract at 6):

> Distributor and Supplier both agree to submit any and all
> unresolved disputes first to mediation in the specific jurisdiction
> and venue [Delaware], and if the results of such mediation are
> unsuccessful, then the parties agree to submit their claims to
> binding arbitration in Wilmington, Delaware according to the rules
> of the American Arbitration Association. Supplier and Distributor
> shall each appoint one arbitrator and the two arbitrators will agree
> to appoint a third arbitrator. Either party can commence arbitration
> if mediation is unsuccessful.

The 2006 Contract similarly provides (2006 Contract at 6 of 11):

> This Agreement shall be governed by the laws of the State of
> Delaware. Distributor and Supplier both agree to submit any and
> all unresolved disputes hereunder first to mediation in Delaware,
> Delaware, and if the results of such mediation are unsuccessful,
> then the parties agree to submit their claims to binding arbitration
> in [Wilmington], Delaware according to the rules of the American
> Arbitration Association.  Supplier and Distributor shall each
> appoint one arbitrator and the two arbitrators will agree to appoint
> a third arbitrator.  Either party can commence arbitration if
> mediation is unsuccessful.

Plaintiffs' filing of this suit thus flies directly in the face of GS Equities and Blair

Ryan's categorical agreement to submit all such disputes to alternative dispute resolution,

first through attempted mediation and then through arbitration. This broad, unambiguous

agreement is binding upon GS Equities and cannot be evaded. As Section 2 of the

Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, states:

> A written provision in any. . . contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract. . ., or the refusal to perform
> the whole or any part thereof. . ., shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Federal policy strongly encourages enforcement of arbitration agreements, and any doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration. E.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 102 S. Ct. 927 (1983). As the Second Circuit stated in CPR (USA) Inc. v. Spray, 187 F.3d 245, 254 (2d Cir. 1999):

> The existence of a broad agreement to arbitrate, such as Section 9.3 of the Agreement, creates a presumption of arbitrability, which is overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Worldcrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997).

The Contracts' requirement that GS Equities and Blair Ryan first submit to mediation is equally enforceable. See CB Richard Ellis, Inc. v. American Environmental Waste Management, 1998 WL 903495 (E.D.N.Y. 1998) (FAA governs mediation provisions); AMF Inc. v. Brunswick Corp., 621 F. Supp. 456 (E.D.N.Y. 1985) (agreement requiring submission of dispute to third party for non-binding advisory opinion is enforceable under FAA).

23

The language of the arbitration provisions that led to the Supreme Court's decision in <u>Moses H. Cone Memorial Hospital</u> and the Second Circuit's decision in <u>CPR (USA)</u> is similar to that in the Contracts here. The agreement at issue in <u>Moses H. Cone Memorial Hospital</u> stated:

> All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof. . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . . .

102 S. Ct. at 931. The agreement that underlay the Second Circuit's holding in <u>CPR (USA)</u> required arbitration of "any controversy or claim arising out of or relating to this agreement." 187 F.3d at 250. As the Second Circuit noted in <u>Collins & Aikman Products Co. v. Building Systems, Inc.</u>, 58 F.3d 16, 20 (2d Cir. 1995), an agreement covering "'any claim or controversy arising out of or relating to the agreement' is the paradigm of a broad clause" that is presumptively enforceable.

Furthermore, as the United State Supreme Court has made clear:

> [T]he [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

<u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) (emphasis in original).

Thus, if this suit is not dismissed in its entirety given the legally unsustainable nature of each of the claims asserted, the suit must at a minimum be stayed, and, if GS Equities wishes to pursue the matter, it must proceed to mediation, and then if that is unsuccessful to arbitration, in accordance with the clear mandate of the Contracts.

CONCLUSION

For the foregoing reasons, the Court should dismiss this action in its entirety. Alternatively, and at a minimum, the case should be stayed pending GS Equities' commencement of arbitration and the conducting and conclusion of any such arbitration proceedings.

Dated: New York, New York
       May 29, 2008

GALLET DREYER & BERKEY, LLP

By: _____
       David S. Douglas (DD-6250)

845 Third Avenue, 8th Floor
New York, New York 10022
(212) 935-3131

Attorneys for Defendants Blair Ryan Co.,
Jay Pelsinger, and Fred Pelsinger

00158905.DOC